# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Case No. 1:22-cv-1229-RMR

SEAN VASSEL,

        Plaintiff,

v.

LITTLETON AUTO REPAIR LLC, and KEN SCHOLL, an individual,

        Defendants.

---

## MOTION FOR DEFAULT JUDGMENT

---

**Penn A. Dodson**
ANDERSONDODSON, P.C.
*penn@andersondodson.com*
11 Broadway
Suite 615
New York, NY 10004
212.961.7639 tel
646.998.8051 fax
Attorney for Plaintiff

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 1

# Table of Contents

I.      INTRODUCTION ...........................................................................................................1

II.     PRELIMINARY MATTERS ......................................................................................1

A.      Standard of Review ....................................................................................................1

B.      No Hearing Is Necessary...........................................................................................2

C.      Jurisdiction ..................................................................................................................3

III.    FACTUAL BACKGROUND .....................................................................................3

IV.     PROCEDURAL HISTORY .......................................................................................5

V.      JOINT AND SEVERAL LIABILITY .....................................................................6

VI.     PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO ESTABLISH LIABILITY ..8

A.      FLSA Overtime Claim ..............................................................................................8

1.      Plaintiff Is Not Exempt As a "Salesperson."........................................................9

B.      Colorado Wage Act ..................................................................................................12

1.      Defendants Are Liable for Plaintiff's Unpaid Bonus Wages .............................13

(a)     Plaintiff's Wages Were "Earned," "Vested," and "Determinable". ....................14

(i)     Plaintiff's Monthly Bonuses Were and Are Owed. .............................................14

(b)     When "Payable": State Statutory Law Requires Employers Promptly Pay Employees All Earned Wages. ..................................................................................................16

(i)     The weekly earned bonuses were payable each month. .......................................17

2.      Defendants Are Liable for Plaintiff's Unpaid Final Wages ...............................18

3.      Defendants Are Liable for Plaintiff's Missed Break Time ................................18

VII.    DAMAGE CALCULATIONS: ................................................................................19

A.      Unpaid Wages ............................................................................................................19

1.      Monthly Bonuses ......................................................................................................20

2.      Final Wages ...............................................................................................................20

3.      Overtime Compensation .........................................................................................20

4.      Meal and Rest Periods .............................................................................................21

B.      FLSA Liquidated Damages .....................................................................................22

C.      Colorado Statutory Penalties...................................................................................23

D.      C.R.S. § 5-12-102 Prejudgment Interest ................................................................24

E.      Attorneys' Fees and Costs .......................................................................................25

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 1

***VIII.   CONCLUSION***............................................................................................................***26***

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 2

**COMES NOW** Plaintiff Sean Vassel, by and through counsel, and hereby moves the Court to Enter a Default Judgment against Defendants pursuant to Fed. R. Civ. Proc. 55 and Local Rule 55.1.

## I. INTRODUCTION

This is a relatively small wage claim, brought by a single plaintiff in regard to his employment for about five months. However, not only must the principles underlying the underpayments be kept in check from a policy perspective for workers like Plaintiff in general, but more to the point to the matter at hand, these wage underpayments mattered to him, significantly.

As alleged in his Complaint, Plaintiff Sean Vassel worked for Littleton Auto Repair LLC and Ken Scholl as a Service Writer for approximately five months, from December 2, 2020 through April 16, 2021. Defendants underpaid Plaintiff Sean Vassel in violation of the Fair Labor Standards Act ("FLSA"), Colorado Minimum Wage Act, as implemented by the Wage Order, and Colorado Wage Claim Act (collectively, "CWA"). Defendants Littleton Auto Repair LLC and its principal, Ken Scholl ("Scholl"), have wholly ignored both Plaintiff's demand for payment of wages and this lawsuit. Thus, Plaintiff now seeks a default judgment against both of them.

## II. PRELIMINARY MATTERS
### A. <u>Standard of Review</u>

"[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains,* 946 F.2d 731, 732-33 (10th Cir. 1991) (internal quotation marks and citation omitted).

Pursuant to Rule 55(b)(1), default judgment must be entered by the clerk of court if the

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 1

claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). Before granting a motion for default judgment, the Court must take several steps. First, the Court must ensure that it has personal jurisdiction over the defaulting defendants and subject matter jurisdiction over the action. See *Williams v. Life Sav. & Loan*, 802 F. 2d 1200, 1202-03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact, which are deemed admitted by a defendant in default, support a judgment on the claims against the defaulting defendants. See *Fed. Fruit & Produce Co. v. Red Tomato, Inc*., 2009 WL 765872, at *3 (D. Colo. March 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment.") (citations omitted). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id*. (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc*., 722 F.2d 1319, 1323 (7th Cir. 1983)).

## B. No Hearing Is Necessary

As relevant here, pursuant to Fed. R. Civ. Proc. 55(b)(2), "[t]he court *may* conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:…determine the amount of damages." (Emphasis added). "To determine the amount of damages that should be awarded on a default judgment, Rule 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Changxing v. Kai Xiang Dong*, 15 Civ. 7554-GBD-AJP (S.D.N.Y. Mar. 31, 2017), citing *Fustok v. Conticommodity Services, Inc*, 873 F.2d 38, 40 (2d Cir. 1989).

While recognizing that it is common practice in Colorado for district courts to hold hearings to establish damages in default contexts, doing so is not required and in this case. Plaintiff asks that the Court in its discretion decide not to do so. First and foremost, the damages alleged

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 2

are computable from the documentary evidence provided herewith. The Plaintiff has attested to the relevant bases for calculation (such as hours worked, pay received, and duration of employment) in the attached Declaration. Beyond that, the damages calculations become a matter of the application of legal principles and math. Second, Plaintiff's counsel is based in New York. While counsel can attend court if necessary or otherwise provide for competent attorney appearances on Plaintiff's behalf, the time and expense of doing so would be not insignificant. Thus, we request that no hearing be held. Should, however, the court decide that a hearing is necessary, we respectfully request that Plaintiff and his counsel be permitted to appear by telephone.

### C. Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's FLSA claims arise under federal law. Dkt. 1, Complaint, at ¶ 3. The Court has personal jurisdiction over the Defendants because Plaintiff alleges that Defendant Ken Scholl is domiciled in Colorado, and Defendant Littleton Auto Repair is incorporated and has its principal place of business in Colorado. (Dkt. 1, ¶¶ 6, 11). Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's related claims brought under Colorado law.

### III. FACTUAL BACKGROUND

Plaintiff Sean Vassel worked for Defendant Ken Scholl at Littleton Auto Repair LLC for approximately five months, from December 2, 2020 until April 16, 2021. Dkt. 1, Complaint, at ¶1, 16; Exhibit "A," Declaration of Sean Vassel, at ¶4. He was a service writer. Dkt. 1, ¶1, 16; Ex. A at ¶¶ 4, 7. As explained in his Declaration, Plaintiff's job duties included "checking customers in, answering phones, assessing the customers' needs and relaying this information to the technician. I would also build estimates by looking up labor times and the cost of parts. I would then coordinate

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 3

with the technician, collect customers' money, and take/return keys from/to our customers." Ex. A at ¶7.

While in this position, Mr. Vassel's compensation consisted of three components: (1) a flat rate of $850 per week ($170 a day), (2) weekly commissions on a tiered basis, and (3) a monthly bonus. Dkt. 1, ¶¶1, 16; Exhibit A at ¶11. Defendants failed to pay Plaintiff the third component of his compensation, i.e., his monthly bonuses. Dkt. 1, ¶1, 20; Ex. A at ¶12. Defendants also failed to pay Plaintiff the final week of his pay. Dkt. 1, ¶1, 2; Ex. A at ¶15.  And Plaintiff did not receive rest breaks, meal breaks, or overtime compensation, despite the fact that the Defendants cannot show entitlement to any overtime exemptions under Colorado law or the FLSA. Dkt. 1, ¶¶25, 26; Ex. A at ¶¶13, 14.

The individual Defendant, Ken Scholl, not only owned the auto repair shop but also managed the shop and Plaintiff daily. Dkt. 1, ¶¶ 12, 13. Ex. A at ¶¶5, 6. Defendant Scholl hired Plaintiff, set his rate of pay and schedule, and supervised him daily. Dkt. 1, ¶¶ 12, 13, 14; Ex. A at ¶¶5, 6. The Plaintiff testifies that "Mr. Scholl was the one who determined what I would get paid and what my job duties were. He supervised my work almost every day. I understood Ken Scholl to be my boss." Ex. A ¶6.

Defendants did not track Plaintiff's time worked. Dkt. 1, ¶ 23; Ex. A. at ¶10. Plaintiff recalls he typically worked five days per week, 12.5 hours per day (7:00 a.m. to 7:30 p.m.). Dkt. 1, ¶ 24; Ex. A. at ¶10. Thus, Plaintiff worked, on average, 60 hours per week. Dkt. 1, ¶ 22; Ex. A. at ¶10. Defendants never paid Plaintiff anything for the time he worked beyond the "normal" workweek, nor did they pay him an overtime rate or wages for hours worked over twelve in a workday or over forty in a workweek. Dkt. 1, ¶¶ 1, 22, 24, 25; Ex. A, ¶14.

Defendants failed to keep statutorily required records, did not provide Plaintiff with

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 4

mandatory meal and rest breaks, had no good faith basis for believing their practices complied with the law, entirely failed to respond to Plaintiff's Demand for Payment of Wages, and entirely failed to respond to this lawsuit. Dkt. 1, ¶¶ 29, 26, 47-53, Ex. A at ¶¶13, 18. As such, Defendants' violations, and failure to pay Plaintiff his owed wages, are willful. A court may accept allegations of willfulness as true where defendants have defaulted. *Changxing v. Kai Xiang Dong, Ling Lin, Iron Sushi Third Ave., Inc.*, 15 Civ. 7554 (GBD) (AJP) (S.D.N.Y. Mar. 7, 2017) (collecting sites).

Treating all well-pled facts in the Complaint as true based on the Defendants' default, the Court should find that Plaintiff has alleged sufficient basis on which to impose joint and several liability on both Defendants to this action. Further, Plaintiff's claims against the Defendants are also sufficient to support a judgment against them as a matter of law.

## IV. PROCEDURAL HISTORY

On June 14, 2021, Plaintiff through counsel, sent Defendants a "Demand for Payment of Wages" pursuant to Colorado Law via US Certified Mail and Email. Dkt. 1, ¶ 49, Ex. B, Demand for Payment of Wages. Plaintiff's demand letter was delivered to the Defendants on June 17, 2021, at *ken@littetonautorepairs.com* and the address of the LLC, 9719 W Coal Mine Ave, Littleton, CO 80123, where Plaintiff worked. *Id*. Defendants did not respond in any way to Plaintiff's demand. Dkt 1, ¶ 51.

Thereafter, on July 12, 2021, Plaintiff's counsel sent Defendants another copy of the demand letter, along with a cover letter underscoring the urgency of responding to the letter. Exhibit "C," Follow-Up Demand for Payment of Wages. This follow-up letter was sent via email to *ken@littetonautorepairs.com*, and via U.S. Mail to 9719 W Coal Mine Ave, Littleton, CO 80123 and Defendant Scholl's home address: 3192 Gold Yarrow Ln, Evergreen, CO 80439.

Having received no response to these letters for eleven months, on May 18, 2022, Plaintiff

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 5

commenced suit against Defendants alleging violations of the FLSA and CWA. Dkt 1. On May 19, 2022, process server Cindy Parrino served Defendant Littleton Auto Repair LLC by personally handing a copy of the Summons and Complaint to Littleton Auto Repair Manager Dave Huntly at 9719 W Coal Mine Ave, Littleton, CO 80123, the repair shop's address. Dkt. 9. On June 23, 2022, process server Kris Hallquist served Defendant Ken Scholl by handing a copy of the Summons and Complaint to Shannon Scholl, self-identified wife of Ken Scholl, outside the residence and usual place of abode of Defendant Ken Scholl at 3192 Gold Yarrow Lane, Evergreen, CO 80439. Dkt. 10. On August 28, 2022, based on Defendants' failure to respond to this lawsuit, Plaintiff moved for a clerk's certificate of default for Defendants Littleton Auto Repair LLC and Ken Scholl. Dkts 11, 12. On August 29, 2022, the Clerk for the District Court of Colorado entered default as to Littleton Auto Repair LLC and Ken Scholl. Dkts 13, 14.

Plaintiff now timely moves for a default judgment and damages comprising his unpaid and underpaid wages, FLSA liquidated damages, CWA statutory penalties, pre-judgment interest, post judgment interest, attorneys' fees and costs, and any further relief the Court deems proper.

## V. JOINT AND SEVERAL LIABILITY

Under federal and state law, in addition to the company, Defendant Ken Scholl was Plaintiff's "employer" individually. Since January 1, 2020, the Colorado Wage Act's definition of "employer" mirrors that in the FLSA.[1] C.R.S. § 8-4-101(6); COMPS Order, Rule 1.6; Colorado H.B. 19-1267. The Colorado Division of Labor Standards and Statistics also published an Interpretive Notice and Formal Opinion ("INFO") on the topic of individual liability and describes the standard as follows:

---

[1] All of the relevant nonpayment events took place after January 1, 2020, so only this standard need be examined.

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 6

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

"Under Section 203(d) of the FLSA, an 'employer' includes '*any person* acting directly or indirectly in the interest of an employer in relation to an employee,' and the FLSA also defines a 'person' as '*an individual*, partnership, association, corporation, business trust, legal representative, or any organized group of persons.' 29 U.S.C. 203(a),(d) (emphasis added). 'The term "person" is…broadly defined under the FLSA to include…an "individual." Thus, an individual who acts directly or indirectly in the interest of an employer in relation to an employee, including an individual corporate officer, owner, participating shareholder, manager, or supervisor, may be subject to individual liability for FLSA violation.'" Ex. E [CDLE INFO #11A], p. 1-2 (emphasis in original).

The FLSA's definition of "employer" can and frequently does cover certain individuals as well as corporate entities. The longstanding four-factor "economic realities test" has been adopted by the Tenth Circuit for determining an employment relationship under the FLSA, which Colorado has adopted in state law. *Koellhoffer v. Plotke-Giordani*, 858 F. Supp. 2d 1181, 1189–90 (D. Colo. 2012), <u>citing</u> *Baker v. Flint Eng'g & Const. Co.*, 137 F.3d 1436, 1439 (10th Cir.1998). The *Koellhoffer* court describes this analysis as follows:

"The *Baker* court held that "[t]he economic reality test includes inquiries into whether the alleged employer has the power to hire and fire employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, and maintains employment records." [ ]. In determining whether a particular individual is an employer, courts have also looked at the level of operational control the individual had over the company, meaning that the individual is either "involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.'"

(internal citations omitted). Courts have also looked at the level of "operational control" the individual has over the company, including whether s/he is involved in the day-to-day operations and/or has some direct responsibility for the supervision of the employees. *Baker*, 137 F.3d at 1439. The breadth of coverage for individuals is intentionally expansive and not designed to be a

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 7

continuation of the previous standard akin to a showing of corporate veil piercing having been necessary.

Following the change in the CWA there is no dispute but that both Defendants were Plaintiff's "employer" as that term is defined by the COMPS Order. 7 C.C.R. 1103-1(1.6); Dkt. 1, ¶¶11–13, 18. Under the applicable legal standards, Defendant Scholl squarely fits the definition of "employer." Here, Plaintiff has alleged that that the individual Defendant hired him, set his rate of pay and work schedule, and supervised him daily. Dkt. 1, ¶¶ 12, 13, 14; Ex. A at ¶¶ 5, 6, 7. Defendant Scholl also managed the auto repair shop daily and determined what Plaintiff's job duties were. Ex. A at ¶¶5, 6. Defendant Scholl directed Plaintiff that his role as a Service Writer included the following responsibilities: checking customers in, answering phones, assessing customers' needs and relaying this information to the technician, building estimates by looking up labor times and costs of parts, coordinating with technicians, collecting customers' money, and taking/returning keys to/from customers. *Id.* at ¶7. More generally, as the owner of Littleton Auto Repair LLC, there is no dispute but that Defendant Scholl had "operational control." *Id.* at ¶5.

Therefore, looking at the economic realities of Plaintiff's employment, the individual Defendant, Ken Scholl, was Plaintiff's "employer." As such, Defendant Scholl should be found to be jointly and severally liable for the violations complained of herein under the FLSA and CWA.

## VI. PLAINTIFF HAS ALLEGED FACTS SUFFICIENT TO ESTABLISH LIABILITY

### A. **FLSA Overtime Claim**

Defendants failed to pay Plaintiff any additional compensation for the hours over 40 he worked in the workweek, in contravention of the FLSA. Defendants also failed to abide by the FLSA's record-keeping requirements and acted willfully.

The FLSA requires employers to pay their employees time and a half the employee's

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 8

regular rate for hours over 40 worked in the workweek. 29 U.S.C. § 206(a). In order to sufficiently allege an FLSA overtime claim, a Plaintiff need only indicate a reasonable basis for ascertaining that he worked, but was not properly compensated for, over 40 hours of work in at least one workweek and/or that his hourly pay, whether computed or actual, fell below the minimum wage. See 29 U.S.C. § 207(a)(1).

Exemption from the FLSA would be an affirmative defense, not an element of a plaintiff's claim. *Reyes v. Snowcap Creamery, Inc.*, Civil Action No. 11-cv-02755-JLK-KMT (D. Colo. Mar. 20, 2014). Thus, Plaintiff need not make any allegations related to his status as an exempt versus non-exempt employee. Additionally, exemptions under the FLSA, must be narrowly construed, and as a consequence the employer must show that the plaintiff "plainly and unmistakably" falls within the exemption's terms, albeit one that permits a "fair" (as opposed to an overly "narrow") analysis of them. *Rodriguez v. Whiting Farms, Inc*., 360 F.3d 1180, 1184 (10th Cir. 2004); *Encino Motorcars LLC v. Navarro et al*., 138 S.Ct. 1134, 1143 (2018). However, in this case even if such an affirmative defense had been asserted based on the fact that Plaintiff was paid a flat amount per week (i.e., a potential "salary" amount), the elements for exemption status simply are not present here, given the nature of Plaintiff's duties.

The only exemption that could conceivably be argued in this case is the "outside sales" exemption. While it is Defendants', not Plaintiff's, burden to first assert and then later prove entitlement to any exemption, in an abundance of caution Plaintiff addresses this below.

1. **Plaintiff Is Not Exempt As a "Salesperson."**

To the extent that the employer was relying on Plaintiff's title as a Service Writer or "Service Advisor" to attempt to lay claim to the "salesman…primarily engaged in the business of selling such vehicles or implements to ultimate purchasers" exemption, it cannot satisfy its

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 9

burden of proof to assert this affirmative defense. 29 U.S.C. §213(b)(10)(A). Additionally, the standards for this auto-related sales exemption are slightly different under state and federal law. If he is not exempt under either standard, he would be entitled to overtime pay as calculated below. In other words, whether he is nonexempt under state law, federal law, or both, the calculated damages for unpaid overtime are the same.

Pursuant to 29 U.S.C. §213(b)(10)(A), "[a]ny salesman, partsman, or mechanic primarily engaged in selling or servicing automobiles, trucks, or farm implements, if he is employed by a nonmanufacturing establishment primarily engaged in the business of selling such vehicles or implements to ultimate purchaser" is exempt from the overtime pay requirements of the FLSA. In *Encino Motorcars, LLC v. Navarro*, the Supreme Court examined the U.S. Department of Labor's interpretation of the §213(b)(10)(A) exemption, specifically as it applies to service advisors of car dealerships. 138 S.Ct. 1134, 1138 (2018). The Court examined whether service advisors are "salesm[e]n…primarily engaged in…servicing automobiles" and concluded that they are. *Id.* at 1140.

The Court also examined the "primarily engaged in…servicing automobiles" section of the § 213(b)(10)(A) exemption. *Id.* at 1140. "The word 'servicing' in this context can mean either 'the action of maintaining or repairing a motor vehicle' or '[t]he action of providing a service,'" citing the Oxford English Dictionary and the Random House Dictionary of the English Language definitions of the word "servicing." *Id.* The Court again concluded that service advisors "satisfy both definitions." *Id.* "Service advisors are integral to the servicing process. They 'mee[t] customers; liste[n] to their concerns about their cars; sugges[t] repair and maintenance services; sel[l] new accessories or replacement parts; recor[d] service orders; follo[w] up with customers as the services are performed (for instance, if new problems are

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 10

discovered); and explain[n] the repair and maintenance work when customers return for their vehicles." *Id.* at 1139. The Court found that even though "service advisors do not spend most of their time physically repairing automobiles", the language of the exemption includes some workers who are not physically working on automobiles themselves but are "integrally involved in the servicing process," and the Court concluded that service advisors fall within that category. *Id.* at 1140–41.

Plaintiff acknowledges that, in light of the Court's decision in *Encino*, it would appear all service advisors are exempt from overtime compensation. And Plaintiff's title while working for Defendants was "Service Advisor". However, Plaintiff argues that despite *Encino*, he is non-exempt, and his role does not fall under the § 213(b)(10)(A) exemption. First, it is Defendants' obligation to argue exemptions as affirmative defenses. Here, Defendants have not argued that Plaintiff is exempt (or made any arguments at all), and Plaintiff need not make allegations related to exempt or non-exempt status. Second, Plaintiff's role as a service advisor at Littleton Auto Repair LLC was different from the service advisors' roles in *Encino* and thus, despite his title his duties were different and thus the exemption does not apply to his position.

In *Encino* the Court listed the following duties of service advisors:

- Meeting customers;
- Listening to customers' concerns about their cars;
- Suggesting repair and maintenance services;
- Selling new accessories or replacement parts;
- Recording service orders;
- Following up with customers as services are performed;
- Explaining the repair and maintenance work when customers pick up cars.

*Id.* at 1139. Plaintiff's role as a service advisor included the following duties:

- Checking customers in;
- Answering phones;

**AndersonDodson, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 11

- Assessing customers' needs and relaying this information to the technician;
- Building estimates for service based on labor times and costs of parts;
- Coordinating service work with technicians;
- Collecting customers' money;
- Taking and returning keys to and from customers.

Ex. A at ¶7. Several of the duties do overlap, but significantly, apart from the parts necessary for a specific repair, unlike the service advisors in *Encino*, Plaintiff did not sell customers new accessories for their vehicles. Ex. A at ¶8. Thus, Plaintiff's role does not fit within the § 213(b)(10)(A) exemption, and he was not exempt from the FLSA overtime pay requirements.

Under Colorado law there is a similar exemption from overtime pay requirements under the COMPS Order. Rule 2.4.1 states "Certain Salespersons and Mechanics. Salespersons, parts-persons, and mechanics employed by automobile, truck, or farm implement (retail) dealers". 7 CCR 1103-1 COMPS Order #37 (2021). Again, an exemption from overtime requirements is an affirmative defense that Defendants are obligated to prove. Plaintiff argues that his role is not covered by this exemption either and thus he is entitled to overtime compensation for the overtime he worked for Defendants.

## B. <u>Colorado Wage Act</u>

Having been separated from his employment with Defendants, Plaintiff is entitled to make a C.R.S. § 8-4-109 claim for all wages earned but not yet paid. Plaintiff alleges that he was owed wages at the time his employment with Defendants ended, which the Defendants willfully withheld in violation of the Colorado Wage Act, C.R.S. § 8-4-101, *et seq*. The Colorado Wage Act allows an employee "to sue his or her former employer for earned wages and other compensation the employer has refused to pay." *Lester v. Career Bldg. Acad.*, 338 P.3d 1054, 1058 (Colo. App. 2014); <u>see also</u> C.R.S. § 8-4-109.

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 12

When the employer-employee relationship ends "by volition of the employer," any wages previously earned by the employee are immediately due and payable. C.R.S. § 8-4-109(1)(a). If the employer refuses to pay the employee's wages, the employee is directed to "make a written demand for the payment." *Id*. at § (3)(a). If the employer does not make payment within fourteen days after receiving the employee's demand, the employer is liable for the unpaid wages and an additional statutory penalty. C.R.S. § 8-4-109(3)(b).

Taking the facts contained in Plaintiff's Complaint as true, Plaintiff has pled a sufficient claim for relief under the Colorado Wage Act. Plaintiff alleges that he performed services for the Defendants and was not paid for those services upon termination of employment. Plaintiff further alleges that he sent a written demand to the Defendants for his unpaid wages but never received payment. The Court, therefore, should enter judgment in favor of Plaintiff on his CWA claims.

1.  **Defendants Are Liable for Plaintiff's Unpaid Bonus Wages**

Colorado law favors employees receiving the wages and other benefits they have been promised as compensation for their work in accordance with their agreements. In addition to base compensation such as hourly or salary wages, the definition of "wages" under the CWA expressly includes, amongst other things, "Bonuses or commissions earned for labor or services performed in accordance with the terms of any agreement between an employer and employee." C.R.S. § 8-4-101(14)(a)(II).

The Colorado Supreme Court recently underscored the fact that non-salary type "wages" are just as protected as other aspects of "wages." In *Nieto v. Clark's Market, Inc.*, the court ultimately held that an employee's accrued vacation time (which, like bonuses, is one aspect of "wages" by statutory definition) was considered "wages" that were payable at the time of termination and was not forfeit by its non-use -- even though there was a handbook provision

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 13

stating that "[i]f you are discharged for any reason or do not give proper notice, you will forfeit all earned vacation pay benefits." 488 P.3d 1140 (Colo. 2021). In other words, Colorado law upholds the concept that all aspects of compensation and benefits that are part of a "deal" employers make with employees in exchange for their work are covered by the wage payment protection laws.

There are four distinct concepts at issue in wage payments that should not be conflated: whether and when the wages are earned, determinable, vested, and payable. The Colorado Supreme Court recently analyzed what some of these words mean under the CWA in *Nieto v. Clark's Market, Inc.*, 488 P.3d 1140 (Colo. 2021). In reaching its conclusion that disclaimed vacation benefits were "wages," the court found that "vested" might, at least in that context, essentially be a synonym of "earned." *Id* at 145.

"Earned," "determinable," and "vested" are distinct from when wages are "payable," however. *Id*., <u>citing</u> *Rohr v. Ted Neiters Motor Co*., 758 P.2d 186, 188 (Colo. App. 1988) ("Rohr's bonus was earned and, therefore, became vested and determinable as of the date of termination, even though not due and payable for [multiple] months thereafter.") The court found that Nieto's vacation pay was considered earned "wages" because she accrued the vacation time for work performed prior to separation. *Id*. at 1145. The vacation pay was consideration for the work she did alongside the cash payments she received, and as such both were considered "wages."

The first question is *whether* the employee is entitled to the pay, which can be answered in the affirmative if it was earned, vested, and determinable. *Id*. at 1146. Then the second question is *when* the pay is payable, which then becomes a question of whether it is considered "late" or not, not whether it is owed in the first place.

### (a) <u>Plaintiff's Wages Were "Earned," "Vested," and "Determinable".</u>

#### (i) *Plaintiff's Monthly Bonuses Were and Are Owed.*

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 14

Plaintiff earned his monthly bonuses for December, January, February, and March in accordance with the terms of his offer letter. Ex. F, p. 5.

Pursuant to his offer letter[Ex. F], Plaintiff was entitled to weekly bonuses that would be accumulated and paid out each month. Weekly bonuses were "calculated based on total weekly sales." Ex. F, p. 4. The company provided the following table to Plaintiff regarding his bonus compensation in his offer letter:

| Service Advisor Monthly Bonus Calculator | | | |
|---|---|---|---|
| Personal Average Weekly Sales | Bonus | Individual Sales for Month = | $129,000.00 |
| $10,000 — $12,500 | $100.00 | Margin = | 63% |
| $12,501 — $15,500 | $200.00 | CSI = | 98% |
| $15,501 — $19,999 | $300.00 | Company Sales for Month = | $240,000.00 |
| $20,000 & Above | $350.00 | Personal Performance Bonus | $950.00 |
| Team Average Weekly Sales | Bonus | Team Performance Bonus = | $950.00 |
| $40,000 — $45,000 | $100.00 | Margin Ded = | 0 |
| $45,001 — $49,999 | $200.00 | CSI Ded = | 0 |
| $50,000 — $55,000 | $300.00 | Total Ded = | 0 |
| $55,001 & Above | $350.00 | Total Bonus = | $1,266.37 |
| Monthly Bonuses are Cumulative | | Personal Average Weekly Sales | $30,000.00 |
| Number of Service Advisors on Team: | 2 | Company Average Weekly Sales | $55,813.95 |

Ex. F, p. 5. This offer letter also outlined the following instances in which bonuses could be reduced:

Deductions for performance below standards:
If gross margin drops below 58% then monthly bonus will be reduced by 40%
Team monthly bonuses* are:) Monthly Bonus Is split between the # of Advisors
If customer satisfaction drops below 95% (by company measurement standards) then monthly bonus will be reduced by 20%
Personal monthly bonuses will be calculated thus (monthly sales /4.3) — I.e. $82,459/ by 4.3 weeks — $19,176.51)

Ex. F, p. 5. Plaintiff earned his monthly bonuses for December, January, February, and March according to the bonus agreement in his offer letter. He was told that "the bonuses were 'delayed' due to the COVID pandemic." Ex. A at ¶12. However, the reason for the delayed

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 15

payout is unimportant. The fact that Plaintiff's bonus was not paid out when originally expected does not render it unearned. Plaintiff had earned these wages for worked performed in December 2020 through March 2021. It "vested" at the end of each month of work. And the amount was determinable based on Plaintiff's weekly sales.

In an official opinion and notice published by the Colorado Department of Labor's Division of Labor Standards and Statistics (the "Division" or "DLSS"), the Division states, "A bonus isn't discretionary if the fact that it would be paid, and how much, was set in advance." Ex. C, p. 5, <u>citing</u> 29 U.S.C. § 207(e)(3); 29 C.F.R. § 779.211. Plaintiff's bonus was not discretionary.

**(b) <u>When "Payable": State Statutory Law Requires Employers Promptly Pay Employees All Earned Wages.</u>**

Colorado law is clear about how long a gap between when earned and when paid is considered acceptable. Pay periods are to be "of no greater duration than one calendar month or thirty days, whichever is longer" and that the gap between the end of the pay period and payday shall be "no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments." C.R.S. § 8-4-103(1)(a). In other words, unless there is an express agreement to the contrary, the longest permissible pay period is 30 days, and the biggest gap between the end of that period and payday is 10 days.

C.R.S. § 8-4-109 takes the timing of payments a step further by setting forth specifics about how the employer is required to "square up" with its employees upon separation. It has different timing provisions depending on whether the employee was fired or resigned. §109(1)(a) says that "When an interruption in the employer-employee relationship by volition of the employer occurs, the wages or compensation for labor or service earned, vested, determinable, and unpaid at the time of such discharge is due and payable immediately." §109(1)(b), which is the one that applies

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 16

here since Plaintiff was not terminated, is this: "When an employee quits or resigns such employee's employment, the wages or compensation shall become due and payable upon the next regular payday." Accounts are to be settled promptly at the time of separation. Therefore, by law, the Defendants had an obligation to pay Plaintiff all the other lingering amounts due by the next regular payday following his separation in April 2021.

Since Defendants did not pay Plaintiff the amounts he was owed, in attempt to resolve his wage dispute without involving the Court, Plaintiff sent Defendants a demand letter outlining the amounts he was owed on June 14, 2021. Ex. B. § 109(3)(a) says that "If an employer refuses to pay wages or compensation in accordance with subsection (1) of this section or section 8-4-103(1)(a)-(b), the employee, the employee's designated agent, or the division may send a written demand for the payment on behalf of the employee…" and then the employer can still pay "all earned, vested, and determinable wages or compensation within fourteen days after the written demand is sent" without accruing additional penalties. Here, through counsel Plaintiff sent a written demand for the wages, but Defendants opted not to tender any funds or respond at all even then.

As demonstrated above, prompt payment is an essential feature of Colorado's wage payment laws, and the burden is on the employer for compliance.

### (i) The weekly earned bonuses were payable each month.

In this case, in the offer letter, the parties did expressly agree to a longer *pay period* in regard to the bonus aspect of his compensation package – it was expressly called a "monthly bonus." The Plaintiff had a clear expectation that he would not receive his bonus on a weekly basis; the language said, and he expected, that it would be on a monthly basis.

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 17

The offer letter contract was silent as to *pay date*. The company could have said that the pay date was to be the fifteenth day of the following month (for example) and that the employee had to continue working there through the fifteenth day of the following month to be entitled to receive it. However, there was no such language in any of the contracts between Plaintiff and Defendants, memos Defendants sent, or anywhere else. In that contractual void, the statutory default of 10 days governs. By law, the Plaintiff's monthly bonuses for December 2020, January 2021, February 2021, and March 2021 should have been paid as follows: the December bonus should have been paid by January 10, 2021, January bonus paid by February 10, 2021, February bonus paid by March 10, 2021, and March bonus paid by April 10, 2021.

**2.   Defendants Are Liable for Plaintiff's Unpaid Final Wages**

Defendants failed to pay Plaintiff for his final week of work at Littleton Auto Repair LLC and thus owe him for these earned and unpaid wages. Pursuant to the § 109 language described above, Plaintiff's earned wages should have all been paid upon the next payday following his separation in April, 2021.

**3.   Defendants Are Liable for Plaintiff's Missed Break Time**

Because Plaintiff was not able to take rest breaks or duty-free meal breaks throughout his employment with Defendants, he is owed wages for this missed break time.

Colorado law requires employers provide employees with rest and meal breaks:

*5.1 Meal Periods. Employees shall be entitled to an uninterrupted and duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours. Such meal periods, to the extent practical, shall be at least one hour after the start, and one hour before the end, of the shift. Employees must be completely relieved of all duties and permitted to pursue personal activities for a period to qualify as non-work, uncompensated time. When the nature of the business activity or other circumstances make an uninterrupted meal period impractical, the employee shall be permitted to consume an on-duty meal while performing duties. Employees shall be permitted to fully consume a meal of choice on the job and be fully compensated for the on-duty meal period without any loss of time or compensation.*

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 18

***5.2 Rest Periods****. Every employer shall authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof, for all employees, as follows:*

| Work Hours | Rest Periods Required | |
|---|---|---|
| 2 or fewer | 0 | |
| Over 2, and up to 6 | 1 | |
| Over 6, and up to 10 | 2 | |
| Over 10, and up to 14 | | 3 |
| Over 14, and up to 18 | | 4 |
| Over 18, and up to 22 | | 5 |
| Over 22 | 6 | |

*5.2.1 Rest periods shall be 10 minutes….*
…
*5.2.4 When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay. This Rule 5.2.4 applies equally to rest periods that Rule 5.2.1 permits to be of different durations.*

Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #36–37, 7 CCR 1103-1 (2020–2021). When the breaks are not provided, the employer has to pay for the missed break time. *Sobolewski v. Boselli*, 2018 WL 4538791 (2018).

Defendants did not provide Plaintiff with these breaks. Plaintiff states "I did not receive rest or meal breaks while in this position. I had to work all day and if I wanted to eat, I had to eat while working." Ex. A at ¶13.

Thus, for every workday Plaintiff is owed for another 50 minutes' worth of time.

**VII.    DAMAGE CALCULATIONS:**

Plaintiff is owed wages and penalties in the following amounts:

**A.    Unpaid Wages**

Plaintiff has demonstrated that he is entitled to judgment in his favor on both his FLSA and CWA claims, and he is entitled to FLSA liquidated damages and CWA penalties. See *Evans v.*

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 19

*Loveland Automotive Investments, Inc.*, 632 Fed.Appx. 496, 498–99 (10th Cir. 2015) (holding that FLSA liquidated damages are compensatory not punitive, CWA damages are punitive for failure to pay within fourteen days in response to a demand for payment, and the federal and state damages are not duplicative). Thus, Plaintiff requests that he recover damages under both the FLSA and CWA.

### 1. Monthly Bonuses

Part of the wage underpayments Plaintiff seeks are for the complete nonpayment of bonuses he is owed pursuant to his compensation agreement contained in his offer letter. Ex. F.

Mr. Vassel was not paid his monthly bonuses for December, January, February, and March. Using the data available to Plaintiff and extrapolating based on that information for the missing information, Plaintiff computes his owed monthly bonuses to amount to $2,183.33 ($2,150 individual plus $33.33 team). Plaintiff testifies that "The value of these bonuses that I earned but have not been paid for amounts to $2,183.33." Ex. A at ¶12.

### 2. Final Wages

Defendants never paid Plaintiff his final pay. Dkt. 1, ¶ 1, 21, 46, Ex. A at ¶15, 16. Defendants did not pay Plaintiff for his final two days of work, for the days of April 15 and 16, 2021. The company owes him $340 for these two days, in base pay ($170 per day). In addition, he did not receive his commissions for these two days. Based on his prior pay checks, Plaintiff earned $9,512 in total weekly commissions. This divided by the 74 days for which he was paid is $128.54 a day. $128.54 multiplied by 2 days comes to $257.08. In total, Plaintiff is owed $597.08 in final pay.

### 3. Overtime Compensation

"[O]vertime must be compensated at a rate not less than one and one-half times the regular

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)
Memorandum of Law in Support of Default Motion
Page 20

rate at which the employee is actually employed…" 29 C.F.R. § 778.107. Plaintiff did not have an hourly rate per se; therefore, his "regular rate" must be calculated. During Plaintiff's employment, the shop was open 7:30 a.m. to 5:30 p.m. Monday through Friday (10 hours a day), 8:00am to 4:00pm Saturdays (8 hours), and was closed on Sundays. Plaintiff was expected to be present and ready to work during all of the open hours of the days he was scheduled to work, plus some time before to get set up and often late to perform work after the shop had been closed to the public.

Thus, his base normal schedule was four 10-hour days and one 8-hour day per week, or 48 hours a week. However, he generally arrived about a half hour early and on weekdays would leave at varying times, usually around 7:30 p.m., give or take. Sometimes, he would work six days a week. Taking all this together, for present purposes we estimate he generally worked 60 hours a week on average, or 20 hours of overtime a week.

Plaintiff's paychecks from December 2, 2020 until April 6, 2021 show that he was paid a total of $22,092.48 over 17.86 workweeks. As indicated above, the company should have also paid him another $597.08 for his final two days of work plus another $2,183.33 in monthly bonuses, for a total of $ 24,872.89. This divided by 17.86 workweeks is $1,392.66 per week. That divided by 40 hours is $34.82 per hour, which becomes his "regular rate" for these purposes. That multiplied by 1.5 is $52.22, which is his overtime rate. Twenty hours of overtime a week times $52.22 per hour is $1,044.49 per week. For the approximately 19 workweeks Plaintiff worked for Defendants, this therefore comes to $18,654.67 in unpaid overtime pay.

### 4. *Meal and Rest Periods*

Finally, Colorado law also requires rest and meal breaks:

*5.1 Meal Periods. Employees shall be entitled to an uninterrupted and duty-free meal period of at least a 30-minute duration when the shift exceeds 5 consecutive hours. Such meal periods, to the extent practical, shall be at least one hour after the start, and one hour before the end, of the shift. Employees must be completely relieved of all duties and*

AndersonDodson, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 21

*permitted to pursue personal activities for a period to qualify as non-work, uncompensated time. When the nature of the business activity or other circumstances make an uninterrupted meal period impractical, the employee shall be permitted to consume an on-duty meal while performing duties. Employees shall be permitted to fully consume a meal of choice on the job and be fully compensated for the on-duty meal period without any loss of time or compensation.*

*5.2 Rest Periods. Every employer shall authorize and permit a compensated 10-minute rest period for each 4 hours of work, or major fractions thereof, for all employees, as follows:*

| Work Hours | Rest Periods Required |
|---|---|
| *2 or fewer* | *0* |
| *Over 2, and up to 6* | *1* |
| *Over 6, and up to 10* | *2* |
| *Over 10, and up to 14* | *3* |
| *Over 14, and up to 18* | *4* |
| *Over 18, and up to 22* | *5* |
| *Over 22* | *6* |

*5.2.1 Rest periods shall be 10 minutes….*

*…*

*5.2.4 When an employee is not authorized and permitted a required 10-minute rest period, his or her shift is effectively extended by 10 minutes without compensation. Because a rest period requires 10 minutes of pay without work being performed, work during a rest period is additional work for which additional pay is not provided. Therefore, a failure by an employer to authorize and permit a 10-minute compensated rest period is a failure to pay 10 minutes of wages at the employee's agreed-upon or legally required (whichever is higher) rate of pay. This Rule 5.2.4 applies equally to rest periods that Rule 5.2.1 permits to be of different durations.*

Colorado Overtime and Minimum Pay Standards Order ("COMPS Order") #36–37, 7 CCR 1103-1 (2020–2021). The company did not provide these. When the breaks are not provided, the employer has to pay for the missed break time. *Sobolewski v. Boselli*, 2018 WL 4538791 (2018). Thus, for every workday Plaintiff is owed for another 50 minutes' worth of time. $52.22 per hour multiplied by 5/6 hours for 46 workdays comes to $2,001.95 in meal and rest break wages owed.

## B. FLSA Liquidated Damages

In addition to the back wages, and having established a violation of the FLSA, Plaintiff requests the Court award FLSA liquidated damages. "Any employer who violates the provisions of . . . section 207 . . . shall be liable to the employee or employees affected in the amount of their

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)
Memorandum of Law in Support of Default Motion
Page 22

unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b); *Francisco v. Susano*, Civil Case No. 10-cv-00332-CMA-MEH, at *2 (D. Colo. Sep. 10, 2013). In order to avoid being assessed liquidated damages, the employer must be able to show that it acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA. 29 U.S.C. § 260. "Reasonableness imposes an objective standard by which to judge the employer's behavior. *Id.* Only where the court finds that the employer meets this burden, may it, in its sound discretion, deny liquidated damages." *Reyes v. Snowcap Creamery, Inc.*, Civil Action No. 11-cv-02755-JLK-KMT (D. Colo. Mar. 20, 2014). Defendants, having failed to appear in this action or respond to the Complaint in any form have, of course, done nothing to meet their burden. *Tackie v. Keff Enterprises, LLC*, No. 14-CV-2074-JPO (S.D.N.Y. Sept. 16, 2014)

Here, Plaintiff seeks an additional amount equal to the amount the court awards as unpaid overtime compensation in FLSA liquidated damages, $18,654.67.

### C. <u>Colorado Statutory Penalties</u>

For a different reason, Plaintiff is entitled to an award of the statutory penalty set forth in C.R.S. § 8-4-109(3). Plaintiff is entitled to recover both liquidated damages and the CWA statutory penalty. *Evans v. Loveland Auto. Invs., Inc.,* No. 15-1049 (10th Cir. 2015). The reason that this does not constitute a double recovery is that the laws "serve different purposes—the FLSA damages are compensatory and the [state law] damages serve a punitive purpose." *Id*., <u>citing with approval</u> *Do Yea Kim v. 167 Nail Plaza*, No. 05 CV 8560 (GBD), 2008 WL 2676598, at *3 (S.D.N.Y. July 7, 2008). In other words, the FLSA liquidated damages and interest are designed to make the plaintiff whole; the CWA penalty provision is designed to punish and/or deter the employer's wrongful conduct.

**ANDERSON**DODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 23

Pursuant to C.R.S. § 8-4-109(3)(b), if an employee is not paid her earned, vested, and determinable wages or compensation within fourteen days after sending a written demand for payment, her employer is liable to her for the wages plus a penalty. Here, Plaintiff, through counsel, sent a written demand for payment of his owed wages to Defendants on June 14, 2021. Ex. B. On June 17, 2021, Defendants received this Demand. Ex. D. Defendants, as they have done with this lawsuit, entirely failed to respond to said demand or tender payment of wages, and to date have not done so. Because Defendants did not pay Plaintiff his owed wages within fourteen days of his sending this demand, Plaintiff is entitled to statutory penalties calculated as follows:

(I)     "One hundred twenty-five percent of that amount of such wages or compensation up to and including seven thousand five hundred dollars; and

(II)    Fifty percent of that amount of such wages or compensation that exceed seven thousand five hundred dollars." *Id.*

Employees are entitled to another 50% of the above base penalties if the failure to pay is willful. *Id.* at (c). Here, Defendants' failure to pay Plaintiff in accordance with his compensation agreement and in response to his demand letter rises to the level of willfulness. Thus, Plaintiff is entitled to the 50% willfulness increase. In this case the penalties amount to:

> $7,500 x 125% = $9,375
> + (($23,437.03 - $7,500) x 50%) = $7,968.52
> $17,343.52 base penalties
> $8,671.76 willfulness penalties

As such, Plaintiff requests that the Court award him a total of $26,015.28, in CWA penalties.

### D.  C.R.S. § 5-12-102 Prejudgment Interest

Colorado statutory law provides for 8% interest to creditors, compounded annually, on money that has been "wrongfully withheld." C.R.S. § 5-12-102(1)(a). This provision is designed to "fully recognize[] the gain or benefit realized by the person withholding such money or property

ANDERSONDODSON, P.C.
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
www.AndersonDodson.com

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 24

from the date of wrongful withholding to the date of payment or to the date judgment is entered…" *Id*. "The purpose of § 5-12-102 is to recognize the time value of money." *Shannon v. Colorado School of Mines*, 847 P.2d 210, 213 (Colo. App. 1992) (awarding 8% prejudgment interest for wages owed under state law).

It is well settled that under the FLSA, a Plaintiff may <u>not</u> recover both liquidated damages and interest, as they are both meant "'to compensate the wronged party for being deprived of the monetary value of his loss from the time of the loss to the payment of the judgment.'" *Greene v. Safeway Stores*, *Inc*., 210 F.3d 1237, 1247 (10th Cir. 2000). However, as there is nothing duplicative about its award, in this case Plaintiff <u>is</u> also entitled to recover, on his backpay damages only, prejudgment interest on the difference between the (higher) computed wage rates owed pursuant to the CWA and the (lower) federal minimum wage rate.

As indicated above, Plaintiff is seeking FLSA liquidated damages only on his FLSA based minimum wage damages (i.e., $7.25 per hour) for the first 40 hours of his work per week. The remaining $4.29-$5.73/hour he should have been paid (i.e., his computed hourly rates of $11.54 to $12.98 minus $7.25 per hour) has thus far not received any liquidated damages, interest, or any other form of compensation to offset the time value of that money that Plaintiff lost.

As such, Plaintiff requests prejudgment interest at a rate of 8% per annum, compounded annually, to the date of the Order on this motion. Plaintiff proposes that once the Order date has been established, Plaintiff's counsel will calculate this amount in conjunction with the fees motion described below.

### E.  <u>Attorneys' Fees and Costs</u>

Should the Court grant the Plaintiff's motion for default, pursuant to the FLSA (29 U.S.C. § 216(b)) and the CWA (C.R.S. § 8-4-110), the Plaintiff is entitled to his attorneys' fees and costs

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 25

from the Defendants. He also entitled to post-judgment interest. 28 U.S.C. §1961. As such, Plaintiff requests that, upon a successful motion for default judgment, the Court permit Plaintiff's counsel to move separately for attorneys' fees and costs. However, at this time, Plaintiff requests that liability for fees and costs be granted with the amount of their award to be determined pending that forthcoming separate motion.

## VIII.  <u>CONCLUSION</u>

Following is a summary of the damages sought as described above:

1. Actual damages under the FLSA and CWA: $23,437.03
2. Liquidated damages under the FLSA: $18,654.67
3. Statutory penalties under the CWA: $26,015.28
4. Pre-judgment interest under Colorado law (at a rate of 8% per annum, compounded annually, to the date of the Order on this motion);
5. Post-judgment interest (at a daily rate as determined by the Clerk of the Court) until Defendants comply with the judgment;
6. Attorney fees and costs under the FLSA and CWA (in an amount to be determined by the Clerk of the Court upon Plaintiff's counsel's further submission); and
7. Any other and further relief as the Court deems proper.

WHEREFORE, the Plaintiff requests that default judgment be entered against all Defendants, jointly and severally, that he be awarded damages as outlined above, and that upon entry of the default judgment he, as the prevailing party, be granted leave to request his attorneys' fees and costs through a separate motion.

Respectfully submitted, this **24th** day of **May**, **2023.**

ANDERSONDODSON, P.C.

/s/ *Penn Dodson*
**Penn A. Dodson**
11 Broadway, Suite 615
New York, NY 10004
212.961.7639 tel
(646)-998-8051 fax
*penn@andersondodson.com*
Attorney for Plaintiff

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 26

## LIST OF EXHIBITS

A. Declaration of Plaintiff Sean Vassel
B. Colorado Wage Demand
C. Follow-Up Copy of Wage Demand
D. Mail Tracking for Demand Letter
E. DLSS INFO #11
F. Plaintiff's Employment Offer Letter

**ANDERSONDODSON, P.C.**
11 Broadway
Suite 615
New York, NY 10004
212.961.7639
*www.AndersonDodson.com*

*Vassel v. Littleton Auto Repair LLC, et al*
Case no. 1:22-cv-1229-RMR (Dist. Colo.)

Memorandum of Law in Support of Default Motion
Page 27